# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0721
Filed July 8, 2026

————————————

**In the Interest of B.L., Minor Child,**

**E.L., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Des Moines County,
The Honorable Jennifer D. Slocum, Judge.

————————————

**AFFIRMED**

————————————

Kimberly A. Auge of The Auge Law Firm, Fort Madison, attorney for
appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Reyna L. Wilkens of Wilkens Law Office, Fort Madison, attorney and
guardian ad litem for minor child.

————————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Schumacher, P.J.

**SCHUMACHER, Presiding Judge.**

The district court terminated the parental rights of a mother and a father to their three-year-old daughter, born in 2023. Only the mother appeals. She argues that the district court should have ordered a six-month extension of time for reunification efforts and that termination is not in the child's best interests. Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in April 2025 due to concerns that the mother was using cocaine while caring for the child, expressing suicidal ideations, and engaging in physical altercations with her boyfriend in the child's presence. The mother tested positive for cocaine and multiple other substances. A founded child abuse assessment was issued.

The mother reported drinking alcohol to the point that she "blacked out" and could not remember using substances. The mother has multiple diagnoses, including borderline personality disorder, bipolar disorder, depression, anxiety, ADHD, and alcoholism. The month prior, she was committed to a psychiatric facility following a manic episode.

A safety plan was entered under which the child would live with the maternal grandparents while the mother addressed the concerns set forth above. In May, the maternal grandmother reported the mother had left the home with the child unsupervised. The grandmother also stated the mother was "out of control" and partying. HHS received similar information from the mother's coworker that the mother was "messed up" and that B.L. was with her.

An ex parte removal order was entered, and the child was adjudicated a child in need of assistance. B.L. has never been returned to parental custody, and there have been no trial home placements.[1]

Later that month, the mother tested positive for cocaine, prompting the department to request drug testing for the child. B.L. tested positive for methamphetamine and cocaine at a very high level. B.L. was treated for cocaine withdrawal symptoms. Meanwhile, the mother's contact with the department was inconsistent. The mother acknowledged using cocaine but stated she was unsure how B.L. tested positive for methamphetamine.

The court entered a dispositional order in July, noting the mother "continues to struggle"—she was using cocaine, she failed to report for drug testing, her participation in services was inconsistent, and she was not addressing her mental-health concerns. The court "highlight[ed] the connection between [the mother's] mental health and substance abuse," noting a recent manic episode during which she drank excessively, threatened an ex-boyfriend, and the police were called.

After declining HHS's recommendation for inpatient treatment for months, the mother agreed to go to treatment in September. She was successfully discharged in October. Thereafter, the mother was inconsistent with her outpatient treatment. She was arrested for operating while intoxicated in November.

---

[1] The child was initially placed with her maternal aunt and uncle and then placed with the maternal grandparents.

By the permanency hearing in February 2026,[2] the mother's status remained stagnant. She had tested positive for cocaine and methamphetamine in November and cocaine in December. She was recently arrested for driving while her license was revoked. Her participation in substance-use, mental-health, and family-centered services was inconsistent, and Safe Care services were not recommended due to her instability. The mother's visits with the child went well, but she did not attend the visits regularly, and she declined opportunities for additional visits. The mother's relationship choices also remained a concern for HHS, as her most recent paramour had an extensive criminal history.

In March, the State petitioned to terminate the parents' rights. Following a hearing later that month, the district court entered an order terminating both parents' rights to the child. The mother appeals.

## SCOPE AND STANDARD OF REVIEW

We conduct a de novo review of orders terminating parental rights, *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022), following a three-step analysis, *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we consider whether there is a statutory ground for termination of the parent's rights under Iowa Code section 232.116(1) (2026). *P.L.*, 778 N.W.2d at 39. Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* When the parent does not raise a claim relating to any of the three steps, we do not address that step and instead limit our review to the specific claims presented.

---

[2] The permanency hearing was originally scheduled for October 2025, but it was continued several times.

*See id.* at 40 (recognizing we do not consider a step the parent does not challenge).

## DISCUSSION

The district court terminated the mother's parental rights under Iowa Code section 232.116(1)(h). While the mother purports to challenge the statutory grounds for termination, from our review of her petition on appeal, we discern that she only maintains that a six-month extension should have been granted and that termination is not in the child's best interests.[3] We therefore limit our review to those claims. *See id.*

Iowa Code section 232.104(2)(b) authorizes extending a child's placement for an additional six months if the court identifies "specific factors, conditions, or expected behavioral changes" that provide a basis for determining "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Here, the mother's history does not support giving her more time to address the concerns precipitating the child's removal. Specifically, the mother has made little progress on her substance-use, mental-health, and relationship issues.

---

[3] If the mother is attempting to raise other issues, we find the issues waived or forfeited for failing to adequately raise or develop the issues. *See In re A.T.*, No. 25-0528, 2025 WL 1704442, at *1 n.2 (Iowa Ct. App. June 18, 2025) (finding sprinkled references to an issue inadequate to avoid waiver or forfeiture of the issue when the issue is not given its own issue heading as required by the Iowa Rules of Appellate Procedure, no authority is cited, or no substantive argument is made); *accord In re E.R.-H.*, No. 25-1627, 2026 WL 44660, at *1 n.1 (Iowa Ct. App. Jan. 7, 2026).

And even if we were to reach the merits of any challenge to the statutory ground relied on by the district court for termination, we conclude this record contains clear and convincing evidence of each element in Iowa Code section 232.116(1)(h).

Despite some periods of engagement with services to address those issues, the mother has had no long-term success.

The mother tested positive for methamphetamine and cocaine (on two occasions) after completing inpatient treatment, and she was only forthcoming about her use after the test results were issued. She failed to attend requested drug screens. At the termination hearing, she testified, "I don't recall exact time when I used [cocaine] since [the permanency hearing]." As the court stated:

> Since Permanency, little has changed. [The mother] remains unemployed, but for her OnlyFans, and in the same housing, which is stable. She admitted she has used both marijuana and alcohol since the Permanency hearing, but denies cocaine use. She did admit that she struggles with alcoholism and her use of alcohol was problematic. She has not attended out-patient substance abuse treatment since Permanency. She now testifies that, after refusing to attend in-patient treatment for the whole of the Child in Need of Assistance case, she is going to be admitted at Heart of Iowa "today or tomorrow."

"We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). Under this record, we are unconvinced that the mother's substance-use and mental-health issues will be resolved within six months. *See In re B.T.*, No. 22-0445, 2022 WL 1234887, at *2 (Iowa Ct. App. Apr. 27, 2022). We, like the district court, decline to grant an additional period of time for reunification efforts.

We turn to the mother's claim that termination is not in the child's best interests. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the

physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)).

The mother's substance-use and mental-health issues remain unresolved. Throughout this case, the mother has indicated she is willing to cooperate with services, but there is no follow-through. Her visits with the child remain fully supervised. And the mother's actions have placed B.L. in dangerous situations and caused her harm. As one example, B.L. tested positive for extremely high amounts of cocaine, she was treated for withdrawal symptoms, and she exhibited signs of withdrawal for months. The child's safety is our paramount concern when making a best-interests determination. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (describing safety as the defining element of the best-interests analysis). Outside her mother's custody, B.L. is reported to be safe, healthy, and otherwise on track developmentally. We conclude termination is in the child's best interests.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**